## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| FELISHA PARKER and LARESHA PARKER, as Next of Kin to ISACC D'WAYNE PARKER, Deceased, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. CIV-24-00178-JD |
| CITY OF LAWTON, et al., | ) ) | |
| Defendants. | ) ) | |

## <u>ORDER</u>

Before the Court are several motions to dismiss claims brought by Felisha and Laresha Parker arising out of the death of Isacc D'Wayne Parker while he was in custody at the Lawton City Jail.

Defendants James T. Smith and John Ratliff filed a Motion to Dismiss [Doc. No. 21]. Plaintiffs responded [Doc. No. 52] and Smith and Ratliff replied [Doc. No. 53]. United States Magistrate Judge Shon T. Erwin issued a Report and Recommendation ("R. & R.") [Doc. No. 62], to which no party objected.

Defendant Brandy Kirkpatrick-Benton filed a Motion to Dismiss [Doc. No. 73],[1] to which Plaintiffs responded [Doc. No. 75] and Kirkpatrick-Benton replied [Doc. No. 76]. Judge Erwin issued an R. & R. [Doc. No. 77]. Neither party filed an objection.

---

[1] Plaintiffs' complaint names Terry Sellers as a defendant, but Plaintiffs later supplemented their complaint to substitute Brandy Kirkpatrick-Benton for Terry Sellers. [Doc. No. 56].

Defendant Cameron Paterson filed a Motion to Dismiss [Doc. No. 41]. Plaintiffs filed a response [Doc. No. 46] and Paterson filed a reply [Doc. No. 49]. Judge Erwin issued an R. & R. [Doc. No. 60], to which Paterson objected [Doc. No. 69]. Plaintiffs did not object.

Defendants Ronnie Watkins, Timothy Scanlon, Savanah Freeman,[2] and Axle Ocasio filed a Motion to Dismiss [Doc. No. 40], to which Plaintiffs responded [Doc. No. 44] and Watkins, Scanlon, Freeman, and Ocasio replied [Doc. No. 50]. Judge Erwin issued an R. & R. [Doc. No. 59], and Defendants Watkins, Scanlon, Freeman, and Ocasio objected [Doc. No. 68]. Plaintiffs did not file an objection.

Defendant City of Lawton ("City") filed a Partial Motion to Dismiss [Doc. No. 20]. Plaintiffs filed a response [Doc. No. 28], to which the City replied [Doc. No. 31]. Judge Erwin issued an R. & R. [Doc. No. 58], and both parties filed objections [Doc. Nos. 61, 64]. In response to the Court's call for supplemental briefing [Doc. No. 78], both parties filed supplemental briefs [Doc. Nos. 80, 81].

The deadlines to object to each R. & R. have expired, and all five motions to dismiss are fully briefed and ready for disposition. Upon its review in accordance with 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b)(3), the Court rules as follows.

---

[2] Although the complaint and R. & R. use "Savannah," Defendants clarify that the correct spelling is "Savanah." [Doc. No. 23 at 1 n.1]. The Court uses the correct spelling and directs the Clerk of Court to correct the spelling on the docket.

I.    <u>**BACKGROUND**</u>

Accepting as true the well-pleaded facts in the complaint, on April 23, 2023, Defendants Kendra Hallagin and Cameron Paterson—officers with the Lawton Police Department—responded to a reported disturbance at the Lawton City Library at around 7:00 p.m. [Doc. No. 1 ¶¶ 17, 24]. At the library, the officers encountered Isacc Parker, who was standing alone, holding a Bible, and "yelling about white people taking over the Native lands" and shouting "that he was wearing a wire." [*Id.* ¶¶ 25, 27]. Mr. Parker was "a diagnosed schizophrenic." [*Id.* ¶ 116]. The officers "immediately arrest[ed]" Mr. Parker for disturbing the peace, stating that "this is the fourth time they have warned him" (Parker had been approaching people outside of a Petco earlier that evening and "speaking to them about the Bible"). [*Id.* ¶¶ 25, 27]. Mr. Parker did not resist arrest, though he did tell Officer Hallagin that "'capitol one murder' is happening and 'Indians' are being shot in the head, and that he is 'a reincarnation of Quanah Parker.'" [*Id.* ¶ 26].

Mr. Parker continued making similar statements from the back seat of Officer Hallagin's patrol vehicle. [*Id.* ¶ 28]. He stated that he was "Quanah Parker's great grandson and that 'Indians' are being killed, that they were 'being followed' by eight cars, that the 'federal bureau' was watching them, that some people 'had been sent to talk to him,' and that there was a 'satanic cult' working in Lawton." [*Id.*]. Officer Hallagin asked Mr. Parker if he was "a Taliaferro patient" (referring to the Jim Taliaferro Community Mental Health Center), and Parker replied, "I'm perfectly fine, I have good health and everything." [*Id.* ¶ 29]. According to the complaint, Officer Hallagin never

explained what Taliaferro is or specifically inquired into Mr. Parker's mental health. [*Id.* ¶ 31].

The Lawton Police Department Policy Manual is excerpted in the complaint, and no party contests its authenticity. The manual states that if a "mentally ill person" is "in need of attention" but is not violent or a threat to himself, others, or the property of others, officers should attempt to locate "a responsible relative or friend who will attend to" the person's needs. [*Id.* ¶ 32]. If the officer cannot identify any friends or relatives, "the officer should refer the matter to Taliaferro authorities." [*Id.*]. Further, "[i]f an officer takes a person who appears to be mentally ill into custody after that person has committed a misdemeanor crime where charges might be filed, he will take the person to Taliaferro." [*Id.*]. Plaintiffs allege that Defendants Paterson and Hallagin never attempted to follow these policies. [*Id.*].

The officers took Mr. Parker to the Lawton City Jail, where he was booked on a misdemeanor count of disturbing the peace. [*Id.* ¶¶ 34, 101]. At the bottom of the one-page complaint, a handwritten note indicated that Parker's "PTC," or, presumably, his pretrial conference, would take place on May 16, 2023. [*Id.* ¶ 35]. The complaint did not indicate whether Mr. Parker was given bond, allowed to speak with an attorney, or received a competency review. [*Id.* ¶ 36]. While Mr. Parker was jailed, Defendant Scanlon stated that Parker "was still being detained in the Lawton City Jail because he refused to take a plea from the City Prosecutor" [*id.* ¶ 37], and an "unknown jailer" stated "that Mr. Parker had a pretrial conference date coming up," which the complaint asserts "there is no documentation of" [*id.* ¶ 38].

4

Mr. Parker spent forty-one days in the Lawton City Jail. [*Id.* ¶ 40]. He was in isolation for the entirety of his detainment. [*Id.* ¶ 44]. Mr. Parker never received a mental health screening, nor was he ever taken to a mental health facility. [*Id.* ¶ 46]. The Lawton Police Department's training manual states that once a person is in custody for a misdemeanor, the Service Division Supervisor may release the person without making them post bond "[i]f the arrestee is a mental risk and/or suicidal," in which case "they may be released to Taliaferro." [*Id.* ¶ 57].

On June 3, 2023, Mr. Parker was found dead on the floor of his jail cell in a large pool of water. [*Id.* ¶¶ 43, 48]. The occupants of adjacent cells reported that Mr. Parker "was drinking water, vomiting, and shouting 'hallelujah' throughout the night before his death." [*Id.* ¶ 48]. Defendant Watkins stated that Mr. Parker "was puking all night" and told responding police officers that "Mr. Parker was in isolation 'because he is kind of crazy.'" [*Id.* ¶ 56]. The medical examiner determined Mr. Parker's cause of death to be "acute water intoxication due to psychogenic polydipsia in setting of schizophrenia." [*Id.* ¶ 47].

The medical examiner's report states "that Mr. Parker was last known alive at approximately 6:00 a.m. when he refused to eat breakfast." [*Id.* ¶ 49]. Plaintiffs allege that Defendant Chapelle Brooks served Mr. Parker breakfast around 5:00 a.m. [*Id.* ¶ 52]. "Defendant Brooks stated that . . . Mr. Parker did not eat his breakfast, that Defendant Brooks made no attempt to speak with him or see if he was conscious at 5:00 a.m., that he witnessed him throughout the night at the sink and talking to himself, that Mr. Parker at 6:00 a.m. was on the floor, naked, and not responsive to Defendant Brooks." [*Id.* ¶ 53].

According to the complaint, Defendant Brooks did not report Mr. Parker's condition or enter Mr. Parker's cell to check on him, even though Mr. Parker "was covered in vomit [and] his cell was covered in water." [*Id.*].

Plaintiffs sued Officers Hallagin and Paterson, six jail officials (Watkins, Brooks, Scanlon, Horne, Freeman, and Ocasio),[3] the City of Lawton ("City"), the Chief of Police for the City of Lawton (Smith), the Lawton City Manager (Ratliff), and the Jail Administrator of the City of Lawton (Kirkpatrick-Benton). Plaintiffs raise five claims:

1)      Claim One: In violation of the Eighth and Fourteenth Amendments, Defendants Hallagin and Paterson acted with deliberate indifference to Mr. Parker's serious medical needs by taking him to jail instead of Taliaferro, and the jail officials were deliberately indifferent to Mr. Parker's serious medical needs by keeping him at the jail without assessing his mental health needs or intervening when Mr. Parker was in crisis.

2)      Claim Two: The City, Smith, Ratliff, and Kirkpatrick-Benton maintained policies, procedures, customs, training, and supervision that were deliberately indifferent to Mr. Parker's serious medical needs in violation of the Eighth and Fourteenth Amendments.

---

[3] Three of the officers or jail officials—Defendants Chapelle Brooks, Stetson Horne, and Kendra Hallagin—have not answered or moved to dismiss the claims against them. Counsel have entered appearances on behalf of these defendants [Doc. Nos. 22, 32, 33], but the docket does not indicate that service has been effected against these defendants or that these defendants have waived service.

3)   <u>Claim Three</u>: Defendants Hallagin and Paterson are liable under the Fourth and Fourteenth Amendments for arresting Mr. Parker without probable cause, and the City, Smith, Ratliff, and Kirkpatrick-Benton are liable for failing to train and supervise officers to prevent such constitutional violations.

4)   <u>Claim Four</u>: The City, Smith, Ratliff, and Kirkpatrick-Benton violated the Sixth and Fourteenth Amendments by failing to provide Mr. Parker appointed counsel.

5)   <u>Claim Five</u>: The City, Smith, Ratliff, Kirkpatrick-Benton, and the jail officials are liable under state law for negligently causing Mr. Parker's death.

As noted above, certain defendants have moved to dismiss the claims against them.

## II.   <u>LEGAL STANDARDS</u>

### A.   **Motions to Dismiss**

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under this standard, the Court accepts all well-pleaded facts as true and views them in the light most favorable to the nonmoving party. *Peterson v. Grisham*, 594 F.3d 723, 727 (10th Cir. 2010). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court must "draw on its judicial experience and common sense" to determine

whether a complaint states a plausible claim for relief. *Iqbal*, 556 U.S. at 678–79. "In other words, dismissal under Rule 12(b)(6) is appropriate if the complaint alone is legally insufficient to state a claim." *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1104–05 (10th Cir. 2017).

### B. Reports and Recommendations

When a magistrate judge has entered a recommended disposition of a matter, the Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made," and the Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). "De novo review requires the district court to consider relevant evidence of record and not merely review the magistrate judge's recommendation." *In re Griego*, 64 F.3d 580, 584 (10th Cir. 1995).

"[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996). The Tenth Circuit has "adopted a firm waiver rule when a party fails to object to the findings and recommendations of the magistrate [judge]." *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). Under this rule, "the failure to make timely objection to the magistrate[] [judge's] findings or recommendations waives appellate review of both factual and legal questions." *Id.* There are two exceptions to the waiver rule: "when (1) a *pro se* litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the 'interests of justice' require review."

8

*Morales-Fernandez v. I.N.S.*, 418 F.3d 1116, 1119 (10th Cir. 2005) (quoting *Moore*, 950 F.2d at 659). The Tenth Circuit has considered various factors to determine whether the interests of justice require review; these factors include "[1] a *pro se* litigant's effort to comply, [2] the force and plausibility of the explanation for his failure to comply, and [3] the importance of the issues raised." *Id.* at 1120.

## III.   ANALYSIS

### A.    Defendants Smith and Ratliff's Motion to Dismiss

Plaintiffs bring Claims Two (deliberate indifference), Three (wrongful arrest), Four (denied right to counsel), and Five (negligence) against Defendants Smith and Ratliff in their individual capacities and their official capacities as chief of police and city manager, respectively. Defendants Smith and Ratliff move to dismiss these claims, arguing in part that they have not been properly served in their individual capacities, the federal claims against them in their official capacities are duplicative of the claims against the City, and the state claim against them in their official capacities is improper under the Oklahoma Governmental Tort Claims Act ("GTCA"). [Doc. No. 21 at 10–14, 16–18, 22].[4] In their response, Plaintiffs concede that "service of process appears to be defective" and "the claims against Smith and Ratliff in their official capacities might be redundant and duplicative because Plaintiffs have also named the City of Lawton." [Doc. No. 52 at 8].

---

[4] The Court uses page numbering from the CM/ECF stamp across the top of district court docket filings.

In light of these concessions, Judge Erwin recommends that the Court "find that service upon Defendants Smith and Ratliff, in their individual capacities, was indeed improper." [Doc. No. 62 at 7]. Because "there is no indication that Plaintiffs cannot properly serve Defendants Smith and Ratliff in their individual capacities," Judge Erwin recommends quashing the original service and giving Plaintiffs thirty days to effectuate proper service. [*Id.* at 8].[5] Judge Erwin declined to reach the other arguments for dismissal of the individual capacity claims, noting that if service is properly obtained, Defendants Smith and Ratliff may file a dispositive motion reasserting their arguments. [Doc. No. 62 at 6 n.3].

As for Plaintiffs' official capacity claims, Judge Erwin recommends dismissing the negligence claim because the GTCA "only permits claims against the responsible government entity, not employees in their official capacities." [*Id.* at 4] (citing 51 Okla. Stat. § 163(C)). The R. & R. recommends dismissing the official-capacity federal claims because "naming both the City of Lawton and Defendants Smith and Ratliff in their official capacities . . . is redundant." [*Id.* at 6].

Judge Erwin advised the parties of their right to file an objection to the R. & R. by October 25, 2024. [*Id.* at 9]. Judge Erwin notified the parties that a failure to make a timely objection would waive appellate review of his recommended ruling. [*Id.*].

---

[5] *See Gregory v. U.S./U.S. Bankr. Ct. for Dist. of Colo.*, 942 F.2d 1498, 1500 (10th Cir. 1991) (holding that "when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant" (quoting *Pell v. Azar Nut Co.*, 711 F.2d 949, 950 n.2 (10th Cir. 1983))).

10

No party objected, and neither exception to the firm waiver rule applies. The parties are represented by counsel. The interests of justice do not require review, as the parties have not explained their lack of objection.

However, while 28 U.S.C. § 636(b)(1) "does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985); *see also* 28 U.S.C. § 636(b)(1) ("A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."). Upon de novo review, the Court modifies the R. & R. The R. & R. recommends that the Court "dismiss the official capacity claims against Defendants Smith and Ratliff, as set forth in Claims Two, Four, and Five." [Doc. No. 62 at 9]. However, Plaintiffs also bring Claim Three (alleging wrongful arrest in violation of the Fourth Amendment) against Defendants Smith and Ratliff in their personal and official capacities. [Doc. No. 1 ¶ 111]. Defendants Smith and Ratliff move to dismiss "all of Plaintiffs' claims against them." [Doc. No. 21 at 23]. Accordingly, the Court MODIFIES the R. & R. and GRANTS the Motion to Dismiss [Doc. No. 21] Claims Two, *Three*, Four, and Five without prejudice to the extent they are asserted against Defendants Smith and Ratliff in their official capacities.

The Court ACCEPTS the R. & R. [Doc. No. 62] as MODIFIED by this Order. Defendants Smith and Ratliff's Motion to Dismiss [Doc. No. 21] is GRANTED IN PART; Claims Two, Three, Four, and Five are DISMISSED without prejudice to the extent they are raised against Defendants Smith and Ratliff in their official capacities.

11

Service on Defendants Smith and Ratliff in their individual capacities is QUASHED.

Plaintiffs have **30 days, or until August 27, 2025,** to effectuate proper service on

Defendants Smith and Ratliff in their individual capacities or risk dismissal of these

claims against these defendants. Failure to file proper service of process or waiver of

service by this deadline will result in the dismissal of these defendants sued in their

individual capacities without prejudice and without further warning by the Court. *See*

Fed. R. Civ. P. 4(m).

     **B.**     **Defendant Kirkpatrick-Benton's Motion to Dismiss**

     Plaintiffs raise the same four claims against Defendant Kirkpatrick-Benton as they

raise against Defendants Smith and Ratliff; that is, they bring Claims Two, Three, Four,

and Five against Defendant Kirkpatrick-Benton, both in her individual capacity and in

her official capacity as Jail Administrator for the Lawton City Jail. Kirkpatrick-Benton's

Motion to Dismiss argues that (1) Plaintiffs have failed to state a plausible § 1983 claim

against her in her individual capacity because they have not alleged that Kirkpatrick-

Benton "directly participated in any alleged violations of the Decedent's constitutional

rights" [Doc. No. 73 at 5]; (2) to the extent she is sued in her official capacity, the federal

claims against her are duplicative of the claims against the City and the state-law claim is

barred by the GTCA [*id.* at 6–8]; (3) Plaintiffs have failed to state a plausible state-law

claim against her in her individual capacity [*id.* at 8–10]; and (4) she is entitled to

qualified immunity [*id.* at 10–11]. In their response, Plaintiffs "concede that Kirkpatrick-

Benton should only be named in her individual capacity" and that she "is immune from

suit under the OGTCA" [Doc. No. 75 at 9], but they assert that they have stated plausible

claims against her in her individual capacity and she is not entitled to qualified immunity [*id.* at 2–11].

Judge Erwin's R. & R. reasons that Plaintiffs have stated a supervisory liability claim for deliberate indifference against Kirkpatrick-Benton because the complaint alleges she is personally involved in enforcing jail policies relating to detainees' mental health and training jail officials on how to treat detainees with mental health issues. [Doc. No. 77 at 9]. Accordingly, the R. & R. recommends denying Kirkpatrick-Benton's motion to dismiss Claim Two and holding that she is not entitled to qualified immunity from this claim. [*Id.* at 11]. However, because Plaintiffs have not alleged Kirkpatrick-Benton's personal involvement in policymaking or training with respect to police practices and the appointment of counsel, Judge Erwin recommends granting Kirkpatrick-Benton's motion to dismiss Claims Three and Four. [*Id.* at 10–11].

The parties did not file an objection to the R. & R., and the deadline to object has expired. The parties are represented by counsel and the interests of justice do not require review, particularly because the parties have not offered any explanation for their failure to object. Therefore, the waiver rule applies.

The Court ACCEPTS the R. & R. [Doc. No. 77]. The Court GRANTS IN PART Defendant Kirkpatrick-Benton's Motion to Dismiss [Doc. No. 73] and DISMISSES Claims Three, Four, and Five without prejudice as asserted against Defendant Kirkpatrick-Benton in her individual and official capacities. Claim Two is DISMISSED without prejudice against Defendant Kirkpatrick-Benton in her official capacity. The Court DENIES the motion to dismiss Claim Two against Kirkpatrick-Benton in her

13

individual capacity; this claim is Plaintiffs' only remaining claim against Defendant Kirkpatrick-Benton.

### C.    Defendant Paterson's Motion to Dismiss

Plaintiffs raise Claim One (deliberate indifference) and Claim Three (wrongful arrest) against Defendant Paterson in his individual capacity. Paterson moves to dismiss these claims, asserting that Plaintiffs have failed to state a claim and that he is entitled to qualified immunity. [Doc. No. 41]. Judge Erwin recommends denying Paterson's motion because Plaintiffs have stated claims under both the Eighth and Fourth Amendments, so "a consideration of qualified immunity is premature at this time." [Doc. No. 60 at 12]. Paterson objected to each aspect of Judge Erwin's R. & R., again asserting that Plaintiffs failed to state a claim for either deliberate indifference or wrongful arrest. [Doc. No. 69 at 2–9]. Because Plaintiffs have not sufficiently alleged a constitutional violation, Paterson argues, "Defendant is entitled to qualified immunity with regard to those claims," which "should be dismissed." [*Id.* at 9].

### 1.    Defendant Paterson has not adequately presented a qualified immunity defense.

Under the doctrine of qualified immunity, when an official is sued under § 1983 in their individual capacity, they "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Once a defendant raises qualified immunity in a motion to dismiss, the burden shifts to the plaintiff to show: (1) the plaintiff has alleged facts that make out a

violation of a constitutional right, and (2) "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see Doe v. Woodard*, 912 F.3d 1278, 1289 (10th Cir. 2019) (discussing the standard for qualified immunity at the pleading stage).

However, "to trigger the plaintiff's two-part burden, a defendant must first 'adequately present' the qualified-immunity defense." *Berryman v. Niceta*, --- F.4th ----, No. 23-1263, 2025 WL 1872778, at *4 (10th Cir. July 8, 2025) (quoting *Tillmon v. Douglas Cnty.*, 817 F. App'x 586, 589 (10th Cir. 2020) (unpublished)). To adequately raise a qualified immunity defense, a defendant must "plead the defense beyond a 'perfunctory assertion.'" *Id.* (quoting *Tillmon*, 817 F. App'x at 590). At the pleading stage, that means that "a defendant may not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard." *Id.* "[A]lthough the Rule 12(b)(6) and qualified immunity arguments can be similar—sometimes exceedingly so— they are not the same," so "a Rule 12(b)(6) failure-to-state-a-claim argument, without more, is insufficient to raise qualified immunity" as a defense. *Montoya v. Vigil*, 898 F.3d 1056, 1064–65 (10th Cir. 2018).

Defendant Paterson's Motion to Dismiss does not adequately raise qualified immunity as a defense. The first section of analysis in Paterson's motion argues that Plaintiffs have failed to state a claim under the Fourteenth Amendment, and the second section argues Plaintiffs have failed to state a Fourth Amendment claim. [Doc. No. 41 at 3–9]. Then, in a third section spanning just over a page, Defendant Paterson raises the defense of qualified immunity. [*Id.* at 9–10]. This section includes two paragraphs that

recite the qualified immunity standard and concludes with two sentences of analysis:

"Here, as discussed above, Plaintiffs have failed to state a plausible § 1983 claim against

Defendant Paterson for denial of medical care or wrongful arrest. Accordingly, Defendant

is entitled to qualified immunity with regard to those claims and they should be

dismissed." [*Id.* at 10] (citing *Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir.

1993)). As was the case in *Berryman*, this "cursory argument makes no attempt to

analyze any facts within the applicable legal framework, and so it provides no clear

factual or legal basis for asserting the defense." 2025 WL 1872778, at *4. Paterson's

perfunctory assertion of qualified immunity attempts to incorporate by passing reference

his separate, distinct arguments that Plaintiffs have failed to state a claim for relief, but

"[t]hose arguments cannot substantiate [his] defense." *Id.* at *5. Thus, Defendant Paterson

is not entitled to qualified immunity at this stage in the proceedings because he has failed

to raise it as a defense.

2.    <u>Plaintiffs have not stated a deliberate indifference claim against</u>
<u>Defendant Paterson.</u>

Plaintiffs' deliberate indifference claim against Defendant Paterson alleges that

Paterson "should have immediately realized [he was] dealing with an individual suffering

a mental health crisis as Mr. Parker was demonstrating . . . objective and well-known

signs of mental illness." [Doc. No. 1 ¶ 66]. Plaintiffs allege Paterson "demonstrated a

deliberate indifference to Mr. Parker's medical needs by failing to follow Lawton Police

Department's own policies and procedures to take Mr. Parker to Taliaferro for mental

health treatment." [*Id.* ¶ 67]. Paterson argues Plaintiffs have failed to state a claim for a

16

constitutional violation because "[t]here is no indication, much less factual support, to show that Defendant Paterson was subjectively aware Decedent faced any risk of harm or that he needed medical care or attention beyond what could be provided at the jail at this point." [Doc. No. 41 at 7]. Further, Paterson argues, Plaintiffs do not allege that Paterson knew that "when he and the arresting officer took Decedent to the jail on April 23[,] Decedent was at risk of dying by acute water intoxication on June 3," nor are there "factual allegations to show that Defendant knowingly and willingly disregarded such risk." [*Id.*].

The R. & R. recommends denying Paterson's motion to the extent it seeks to dismiss Plaintiffs' deliberate indifference claim. According to the R. & R., Plaintiffs' allegations that Paterson observed Mr. Parker "making incoherent and illogical statements . . . . satisfy the objective component of the deliberate indifference test" because "from Mr. Parker's behavior, it was obvious that he was in need of mental health treatment." [Doc. No. 60 at 7]. As for the subjective component, Plaintiffs allege that the Lawton Police Department Policy Manual instructs officers either to locate the mentally ill person's friends or family or take the person to the mental health center. [Doc. No. 1 ¶ 32]. Because Paterson "failed to exercise either option, and instead took Mr. Parker to jail," the R&R concludes that "Plaintiffs have adequately alleged that Defendant Paterson was subjectively aware of Mr. Parker's need for mental health treatment, but disregarded the same." [Doc. No. 60 at 8]. Paterson's objection argues that the Court should grant his motion because the complaint does not sufficiently allege that he directly participated in violating Mr. Parker's constitutional rights, nor does it allege that Paterson knew of and

17

disregarded a substantial risk that Mr. Parker would die of acute water intoxication. [Doc. No. 69 at 2–6].

"The Fourteenth Amendment's Due Process Clause entitles pretrial detainees to the same standard of medical care owed to convicted inmates under the Eighth Amendment." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017). Thus, a state official's "deliberate indifference to serious medical needs" of a pretrial detainee violates the Fourteenth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 101, 104 (1976). Pretrial detainees may bring claims of deliberate indifference against jail officials (whether or not they are medical professionals), law enforcement officers, and entities operating jails. *See Rife*, 854 F.3d at 641–42.

"The Supreme Court has established a two-pronged test for deliberate indifference claims. Under this test, a plaintiff must satisfy an objective prong and a subjective prong." *Id.* at 647 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 837–40 (1994)). To satisfy the objective component, a plaintiff must allege that the deprivation of medical care was "sufficiently serious." *Farmer*, 511 U.S. at 834. Generally, "[a] medical need is sufficiently serious 'if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)).

To satisfy the subjective component, a plaintiff must allege that the defendant acted with a "sufficiently culpable state of mind," *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)), meaning that "the official knows of and

disregards an excessive risk to inmate health or safety." *Id.* at 837. Under this standard, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence," and, after the pleading stage, "a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Turning first to the objective prong, a psychological medical need can be sufficiently serious to satisfy the objective component. *See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1316 (10th Cir. 2002) (holding that a reasonable jury could find an arrestee's "OCD-induced panic attack" was sufficiently serious). The complaint alleges that Mr. Parker was "a diagnosed schizophrenic." [Doc. No. 1 ¶ 116]. In addition, Mr. Parker's conduct would have made it obvious to a lay person that he was suffering a mental health episode and needed psychiatric attention. Mr. Parker was allegedly making nonsensical statements, saying that he was the "reincarnation of Quanah Parker" and also "Quanah Parker's great grandson," that eight cars were following the police cruiser, that the "federal bureau" was watching him, people "had been sent to talk to him," and that there was a "satanic cult" at work in Lawton. [*Id.* ¶¶ 26, 28]. Because Mr. Parker's medical need was both diagnosed and obvious to a lay person, Plaintiffs have alleged that his psychological medical need was sufficiently serious, thus satisfying the objective component.

However, as to the subjective inquiry, Plaintiffs do not allege sufficient facts to allow the Court to draw the inference that Paterson knew about and disregarded an excessive risk to Mr. Parker's health or safety. To be sure, Defendant Paterson observed Mr. Parker displaying obvious signs of a mental health episode, and Officer Hallagin asked Mr. Parker if he was a Taliaferro patient in front of Paterson. But while the Court can reasonably infer from these allegations that Paterson knew Mr. Parker had psychological medical needs, these allegations do not support the inference that Paterson knew that Mr. Parker's mental health posed an excessive risk to his own health or safety. Plaintiffs do not allege that Mr. Parker's conduct suggested he might harm himself. They do not allege that Mr. Parker harmed himself or attempted to do so while he was in Paterson's custody, nor do they allege that Paterson knew the jail did not have any medical staff on duty. Plaintiffs allege that Paterson violated Lawton Police Department policies by failing to take Mr. Parker to Taliaferro to receive mental health treatment. [Doc. No. 1 ¶ 67]. "But a policy violation, without more, is not a constitutional violation," *Est. of Beauford v. Mesa Cnty.*, 35 F.4th 1248, 1272 (10th Cir. 2022), and there are no allegations suggesting that Paterson knew of and disregarded a substantial risk of serious harm to Mr. Parker. Thus, Plaintiffs have not stated a claim against Paterson for deliberate indifference under the Fourteenth Amendment.

       3.     <u>Plaintiffs have not stated a Fourth Amendment claim against Defendant Paterson.</u>

Plaintiffs allege that Paterson violated the Fourth Amendment by wrongfully arresting Mr. Parker without probable cause. According to the complaint, Paterson did not

personally observe Mr. Parker disturbing the peace, so there was no probable cause to arrest him for a misdemeanor offense. [Doc. No. 1 ¶¶ 101–08]. Paterson's motion to dismiss this claim rests on the fact that Officer Hallagin is listed as the arresting officer on the arrest report.[6] [Doc. No. 41 at 7]. Paterson argues that since he was not listed as the arresting officer, he did not arrest Mr. Parker, so Plaintiffs have failed to state a Fourth Amendment claim against him. [*Id.* at 9]. Unhelpfully, none of Paterson's filings (his motion, reply, or objection to the R. & R.) address whether there was probable cause for Mr. Parker's arrest. Instead, Paterson consistently repeats the same refrain: "A deep dive into the analysis of whether probable cause existed for the arrest of Decedent is not necessary to conclude that Defendant Paterson is entitled to a dismissal of this cause of action." [Doc. No. 41 at 9; Doc. No. 69 at 8]; *see* [Doc. No. 49 at 6].

Plaintiffs' response argues that Paterson personally participated in Mr. Parker's arrest and the deprivation of his constitutional rights even though the arrest report did not list Paterson as the arresting officer. [Doc. No. 46 at 9]. Judge Erwin agrees and recommends denying Paterson's motion to dismiss Plaintiffs' wrongful arrest claim because Plaintiffs sufficiently allege Paterson arrested Mr. Parker for Fourth Amendment purposes. [Doc. No. 60 at 12]. "Plaintiffs have alleged a lack of probable cause" and

---

[6] Paterson attached a copy of the arrest report as an exhibit to his Motion to Dismiss. [Doc. No. 41-1]. The complaint references the police report [Doc. No. 1 ¶¶ 27, 31], the report is central to the complaint, and Plaintiffs do not dispute the report's authenticity. The Court therefore considers the arrest report without converting Paterson's motion to dismiss to a motion for summary judgment. *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013).

"Defendant does not dispute this fact," so Judge Erwin recommends holding that Plaintiffs have stated a claim. [*Id.*]. Paterson objects to the R. & R. on the same grounds he raises in his motion and reply: Officer Hallagin arrested Mr. Parker, so Plaintiffs cannot state a wrongful arrest claim against Paterson. [Doc. No. 69 at 6–9].

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Arrests are "seizures" of "persons," so "they must be reasonable under the circumstances." *Dist. of Columbia v. Wesby*, 583 U.S. 48, 56 (2018). "A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime in the officer's presence." *Id.*

Probable cause exists if, at the moment of the arrest, "the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964); *accord Cortez v. McCauley*, 478 F.3d 1108, 1116 (10th Cir. 2007) (en banc). "To determine whether an officer had probable cause to arrest an individual," the Court must "examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Probable cause "is a fluid concept" that "is incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Id.* at 370–71 (citation omitted). At

22

bottom, though, probable cause "is not a high bar." *Kaley v. United States*, 571 U.S. 320, 338 (2014).

To start, the Court rejects Paterson's argument that he is not liable for wrongfully arresting Mr. Parker because he was not personally involved in Parker's arrest. For Fourth Amendment purposes, "a person is 'seized' only when, by means of physical force or a show of authority, his freedom of movement is restrained." *United States v. Mendenhall*, 446 U.S. 544, 553 (1980). An arrest is a particular type of seizure that "is distinguished by the involuntary, 'highly intrusive' nature of the encounter." *Cortez*, 478 F.3d at 1115 (quoting *Oliver v. Woods*, 209 F.3d 1179, 1186 (10th Cir. 2000)). Plaintiffs allege that Officers Hallagin and Paterson were both dispatched to the Lawton City Library to "remov[e]" Mr. Parker, who was allegedly "causing a disturbance." [Doc. No. 1 ¶ 24; Doc. No. 41-1 at 2]. The complaint alleges that "[t]hey immediately arrest[ed]" Mr. Parker after approaching him. [Doc. No. 1 ¶¶ 24–25]. According to the complaint, "Hallagin and Paterson, after arresting Mr. Parker for 'disturbing the peace,' proceed[ed] to laugh at him while he [was] detained in [Hallagin's] patrol vehicle." [*Id.* ¶ 33]; *see also* [*id.* ¶ 101] ("Defendants Hallagin and Paterson arrested Mr. Parker for 'disturbing the peace' which is a misdemeanor offense."). Even though the arrest report lists Hallagin as the arresting officer, Plaintiffs have sufficiently pleaded that Paterson personally participated in restraining Mr. Parker's freedom of movement by a show of authority in an involuntary, highly intrusive manner. Thus, Paterson must have had probable cause for Mr. Parker's arrest to comport with the Fourth Amendment.

The Lawton Municipal Code prohibits "disturbing the peace," which, as relevant here, is defined as

> the doing of any of the following in such a manner as would foreseeably alarm or disturb the peace of another or others:
>
> . . .
>
> 11. Making of loud and/or offensive noises which unreasonably, continuously or substantially annoy, disturb, injure or endanger the comfort, repose, health, peace or safety of others;
>
> . . .
>
> 13. Committing any other act in such a manner calculated as to unreasonably disturb, interfere or alarm the public or the comfort and repose of any person.

Lawton, Okla., Mun. Code § 16-4-1-401(B) (2008). Considering the totality of the circumstances at the time of the arrest as alleged in the complaint and reflected in the arrest report, Paterson personally observed Mr. Parker "yelling about white people taking over the Native lands [and] that he was wearing a wire." [Doc. No. 1 ¶¶ 24, 27; Doc. No. 41-1 at 2]. Mr. Parker was "pacing outside the library" with a suitcase while talking about "capital one murder," saying that "'Indians' are being shot in the head," and claiming to be "a reincarnation of Quanah Parker." [Doc. No. 1 ¶¶ 26, 33; Doc. No. 41-1 at 2]. When Paterson and Hallagin arrested Mr. Parker, Officer Hallagin stated that "this is the fourth time they have warned him." [Doc. No. 1 ¶ 25]. Presumably, Officer Hallagin was referring to the fact that officers had responded earlier that evening to reports that Mr. Parker was "harassing patrons" outside of a Dollar Tree and then a Petco. [Doc. No. 41-1 at 2].

In light of these factual allegations, it was reasonable for Paterson to believe that Mr. Parker was disturbing the peace in Paterson's presence. Paterson personally observed Mr. Parker yell alarming things outside the public library. Even if Paterson was not personally aware of the prior events at the Petco and Dollar Tree, Hallagin's statement that "this is the fourth time they have warned him" would have informed Paterson that Parker's conduct was a continuation of similar disruptive behavior. Parker's erratic, continuous conduct could unreasonably disturb the peace of others. The fact that Mr. Parker was carrying a suitcase—the contents of which were apparently unknown to the officers—could also cause alarm. Thus, even viewing the factual allegations in the complaint in the light most favorable to Plaintiffs, Paterson had probable cause to arrest Mr. Parker for disturbing the peace. Accordingly, the Court concludes that Plaintiffs have not stated a plausible claim that Defendant Paterson violated the Fourth Amendment.

*    *    *

Because Plaintiffs have not stated a claim against Defendant Paterson, the Court GRANTS Paterson's Motion to Dismiss [Doc. No. 41] and REJECTS the R. & R. [Doc. No. 60]. Plaintiffs' claims against Defendant Paterson are dismissed without prejudice.

### D.    Defendants Watkins, Scanlon, Freeman, and Ocasio's Motion to Dismiss

The jail officials—Defendants Watkins, Scanlon, Freeman, and Ocasio—move to dismiss the two claims raised against them: Claim One (deliberate indifference) and Claim Five (negligence). [Doc. No. 40]. These defendants argue that Plaintiffs have failed

to state a claim for deliberate indifference, they are entitled to qualified immunity for that claim, and they are immune to suit on the state-law claim under the GTCA.

Judge Erwin's R. & R. recommends granting the motion to dismiss the negligence claim because these defendants are immune under the GTCA. [Doc. No. 59 at 13–15]. As for the deliberate indifference claim, Judge Erwin reasons that Plaintiffs have stated a claim only against Defendant Watkins. [*Id.* at 11–12]. Plaintiffs allege that Defendant Watkins said Mr. Parker was in isolation because he was "kind of crazy" and that he was "puking all night," so Judge Erwin concludes that Plaintiffs have alleged he acted with the requisite mental state to be liable for deliberate indifference. [*Id.*] (quoting [Doc. No. 1 ¶ 56]). But the R. & R. states that Plaintiffs have not offered "any factual allegations that plausibly support such an inference" as to Defendants Scanlon, Freeman, or Ocasio. [*Id.* at 12]. Thus, Judge Erwin recommends granting the motion to dismiss the deliberate indifference claim against Defendants Scanlon, Freeman, and Ocasio, and holding that these defendants are entitled to qualified immunity because Plaintiffs have not alleged a constitutional violation. [*Id.*]. The R. & R. recommends denying the motion to dismiss the deliberate indifference claim against Defendant Watkins and concluding that he is not entitled to qualified immunity at the pleading stage. [*Id.*]. In his objection to the R. & R., Defendant Watkins argues that Plaintiffs fail to state a claim for deliberate indifference because the complaint does not allege that Defendant Watkins was aware of and disregarded the fact that Mr. Parker faced a substantial risk of dying from water intoxication. [Doc. No. 68].

26

Plaintiffs did not file an objection to the R. & R. Neither exception to the firm waiver rule applies: Plaintiffs are represented by counsel and the interests of justice do not require review, particularly because Plaintiffs have not offered any explanation for their failure to object.

However, upon de novo review, the Court modifies the unobjected-to portion of the R. & R. that concludes that Defendants Scanlon, Freeman, and Ocasio are entitled to qualified immunity. *See Thomas v. Arn*, 474 U.S. 140, 154 (1985) (explaining that 28 U.S.C. § 636(b)(1) "does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard"). As discussed above, "when a defendant asserts qualified immunity, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Cillo v. City of Greenwood Vill.*, 739 F.3d 451, 460 (10th Cir. 2013); *see also supra* Section III.C.1. But to trigger this burden, a defendant must adequately raise qualified immunity as a defense, and "a defendant may not merely rely on substantive legal arguments based on the Rule 12(b)(6) failure-to-state-a-claim standard" to do so. *Berryman v. Niceta*, --- F.4th ----, No. 23-1263, 2025 WL 1872778, at *4 (10th Cir. July 8, 2025).

Defendants Watkins, Scanlon, Freeman, and Ocasio did not adequately raise qualified immunity in their motion to dismiss, so they are not entitled to qualified immunity at the pleading stage. Much like Defendant Paterson's motion, these defendants' motion argues that Plaintiffs have failed to state a claim for relief, then (in a

27

separate section) provides a general statement of the law of qualified immunity and asserts that the defendants are entitled to qualified immunity because, "as discussed above, Plaintiffs have failed to state a plausible § 1983 claim against the Defendants in their individual capacities." [Doc. No. 40 at 10]. In contrast to Defendant Paterson's motion, the jail officials' motion offers one additional sentence summarizing the defendants' argument that Plaintiffs have failed to state a claim:

> There are insufficient factual allegations to demonstrate that any of the Defendants, much less any specific Defendant, had the requisite knowledge of a risk of harm posed to Decedent, much less the actual risk of harm of acute water intoxication, nor are there any specific allegations to demonstrate any of them deliberately ignored such risk.

[*Id.*]. This argument "do[es] nothing more than make passing references to [the defendants'] separate arguments" that Plaintiffs failed to plead sufficient factual allegations to state a claim for deliberate indifference. *Berryman*, 2025 WL 1872778, at *5. Further, the motion erroneously "conflates" these 12(b)(6) arguments "with the first prong of the qualified immunity analysis (which requires that the defendant's actions violated a federal constitutional or statutory right)." *Id.* at *4. Without more, these defendants have not adequately raised qualified immunity as a defense, so the Court MODIFIES the R. & R. and concludes that Defendants Watkins, Scanlon, Freeman, and Ocasio are not entitled to qualified immunity at the pleading stage.[7]

---

[7] The Court does not modify the R. & R.'s conclusion that Plaintiffs have failed to state a claim for deliberate indifference against Defendants Scanlon, Freeman, or Ocasio. *See* [Doc. No. 59 at 12]. The practical effect of the Court's modification is a dismissal without prejudice rather than a with-prejudice dismissal. *Contrast Lamle v. Eads*, 134 F.4th 562, 567 (10th Cir. 2025) (affirming dismissal with prejudice because defendant was entitled to qualified immunity), *with Triplett v. LeFlore Cnty.*, 712 F.2d 444, 446

Accordingly, the Court ACCEPTS the R. & R. [Doc. No. 59] as MODIFIED by this Order to the extent it recommends dismissing Claim One (deliberate indifference) against Defendants Scanlon, Freeman, and Ocasio and Claim Five (negligence) against Defendants Watkins, Scanlon, Freeman, and Ocasio. The Court GRANTS the Motion to Dismiss [Doc. No. 40] Claim One against Defendants Scanlon, Freeman, and Ocasio and Claim Five against Defendants Watkins, Scanlon, Freeman, and Ocasio. These claims are DISMISSED without prejudice as to these defendants.

The only objected-to issue the Court must review de novo is whether Plaintiffs have stated a claim for deliberate indifference against Defendant Watkins. As discussed above, to state a claim for deliberate indifference, "a plaintiff must satisfy an objective prong and a subjective prong." *Rife v. Okla. Dep't of Pub. Safety*, 854 F.3d 637, 647 (10th Cir. 2017); *see also supra* Section III.C.2. Defendant Watkins does not dispute that Mr. Parker's medical need was sufficiently serious to satisfy the objective component of this analysis at the pleading stage. [Doc. No. 50 at 3]. Thus, his challenge rests on the second prong of the deliberate indifference analysis: whether Plaintiffs have plausibly alleged that Defendant Watkins knew of and disregarded an excessive risk to Mr. Parker's health or safety. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (explaining that "a prison official must have a 'sufficiently culpable state of mind'" (citation omitted)).

---

(10th Cir. 1983) ("In dismissing a complaint for failure to state a claim, the court should grant leave to amend freely 'if it appears at all possible that the plaintiff can correct the defect.'" (quoting 3 *Moore's Federal Practice* § 15.10 & n.2 (1983))).

Plaintiffs argue that two of Defendant Watkins's alleged statements demonstrate that he acted with a sufficiently culpable state of mind. First, Defendant Watkins told investigating officers that Mr. Parker was "puking all night." [Doc. No. 1 ¶ 56]. Second, Defendant Watkins also told investigators that "Mr. Parker was in isolation 'because he is kind of crazy.'" [*Id.*]. Based on these statements, Plaintiffs argue that Defendant Watkins "knew Mr. Parker was suffering from mental health issues," but "instead of following [the jail's] procedures to release him to Taliaferro, they merely put him in isolation." [Doc. No. 44 at 10]. Moreover, "Defendant Watkins was aware that Mr. Parker was vomiting all night, yet no one provided Mr. Parker with any medical care or showed any concern." [*Id.*].

These allegations do not lead to a plausible inference that Defendant Watkins knew of and disregarded an excessive risk to Mr. Parker's health or safety. The Seventh Circuit's opinion in *Rice ex rel. Rice v. Corr. Med. Servs.*, 675 F.3d 650 (7th Cir. 2012), *abrogated on other grounds by Kingsley v. Hendrickson*, 576 U.S. 389 (2015), is instructive. Mr. Rice, who suffered from schizophrenia, was in custody at a jail while awaiting placement at a state psychiatric facility. *Id.* at 654. Late one evening, Rice died in his cell as a result of psychogenic polydipsia. *Id.* at 662. Other inmates had heard Rice "gulping water and vomiting in his cell" for several hours, so they "'mule-kicked' their cell doors in an effort to get someone's attention," but no guards responded. *Id.* at 662, 679. Rice's estate brought a deliberate indifference claim against some of the guards who were on duty the night Mr. Rice died, and the Seventh Circuit affirmed the district court's grant of summary judgment to the guards. *Id.* at 679. Although a reasonable factfinder

"might conclude that the guards exhibited a generalized recklessness with respect to the safety of the inmates" by failing to conduct regular checks of the jail unit, the court determined that "there is no evidence that the guards were subjectively aware of the possibility that Rice might engage in a behavior such as compulsive water drinking that would cause him to die within a matter of hours and that they consciously disregarded that risk." *Id.* Although Mr. Rice's "mental illness appears to have been common knowledge at the jail," there was no evidence that any guard knew that Mr. Rice "might engage in behavior like compulsive water drinking that could quickly result in his death absent intervention by the jail staff." *Id.* at 679–80. "So even if the guards recklessly failed to conduct hourly checks as they were required to do," the Court concluded that "no reasonable factfinder could find that they knew of, and were deliberately indifferent to, a risk that Rice might come to medical harm like cardiac arrhythmia brought on by water toxicity were he not checked on regularly." *Id.* at 680.

Similarly, here, there are no factual allegations suggesting that Defendant Watkins knew that there was a substantial risk that Mr. Parker might harm himself by engaging in behavior like drinking an excessive amount of water. Defendant Watkins's knowledge of Mr. Parker's mental illness is not enough to establish his awareness of an excessive risk to Mr. Parker's health or safety, particularly in the form of acute water intoxication. Plaintiffs' arguments to the contrary—that the jailers should have performed better checks of the unit, should have released Mr. Parker to Taliaferro, or should have been trained in identifying symptoms of a mental health crisis, [Doc. No. 44 at 11–12]—sound in negligence and do not meet the more exacting standard of criminal recklessness. *See*

31

*Farmer*, 511 U.S. at 839–40 (adopting "subjective recklessness as used in the criminal law . . . as the test for 'deliberate indifference' under the Eighth Amendment"). Absent allegations that Defendant Watkins was aware of facts from which he drew the inference that Mr. Parker posed a substantial risk of harming himself, the complaint fails to allege that Defendant Watkins acted with deliberate indifference to Mr. Parker's serious medical needs.

To be sure, in a number of cases, the Tenth Circuit has held that prison or jail officials were deliberately indifferent to an incarcerated person's serious medical needs when the officials knew a prisoner or arrestee was vomiting and the officials did not intervene. However, these cases involve prisoners or arrestees suffering withdrawal from drugs or alcohol, and the officials in these cases were either aware of additional symptoms or had direct notice that the arrestee or prisoner was experiencing withdrawal. *E.g.*, *Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 859 (10th Cir. 2021) (concluding that a jail official knew of and disregarded a substantial risk of serious harm when she knew that an arrestee had opiates in her system, "looked sick and was 'walking like a skeleton,'" had been vomiting for four straight days, and could not keep food or water down).

Indeed, although the subjective prong can be satisfied if a risk is "obvious," in cases involving an arrestee suffering withdrawal from drugs or alcohol, the Tenth Circuit has made clear that "frequent vomiting alone does not present an obvious risk of severe and dangerous withdrawal." *Quintana v. Santa Fe Cnty. Bd. of Comm'rs*, 973 F.3d 1022, 1029 (10th Cir. 2020). In *Quintana*, the court determined that one guard was deliberately

32

indifferent to an inmate's medical needs because the guard did not help the inmate after the inmate informed the guard "that he was withdrawing from heroin and was 'throwing up blood.'" *Id.* at 1030. However, because another guard only knew that the inmate "had vomited in his cell and exhibited other common signs of withdrawal," the court concluded that he did not disregard a substantial risk of serious harm: "Absent something more—like knowledge of *bloody* vomit—the complaint [did] not plausibly allege deliberate indifference to serious withdrawal." *Id.*

In light of *Quintana*, the Court concludes that Mr. Parker's vomiting did not present an obvious risk of harm. Although Mr. Parker was not suffering withdrawal, the Court believes that *Quintana*'s reasoning applies here. In contrast to symptoms such as unconsciousness, "a gangrenous hand or a serious laceration," frequent vomiting would not alert a reasonable person to an obvious and substantial risk to one's health or safety. *Id.* at 1029 (quoting *Self v. Crum*, 439 F.3d 1227, 1232 (10th Cir. 2006)).

In short, Defendant Watkins's statements that Mr. Parker was "kind of crazy" and "puking all night" do not support the reasonable inference that he knew of and disregarded a substantial threat to Mr. Parker's health or safety. Nor did Mr. Parker's vomiting present an obvious risk of severe harm. Thus, the Court concludes that Plaintiffs have not stated a claim for deliberate indifference against Defendant Watkins because they have not satisfied the subjective element of such a claim.

Accordingly, the Court REJECTS the R. & R. [Doc. No. 59] to the extent it recommends rejecting defendants' argument for dismissal as to Defendant Watkins and concluding that Plaintiffs have stated a claim for deliberate indifference under the

Fourteenth Amendment against Defendant Watkins. The Court GRANTS the Motion to Dismiss [Doc. No. 40] Claim One against Defendant Watkins and DISMISSES that claim without prejudice against Defendant Watkins. Thus, in sum, the Motion to Dismiss [Doc. No. 40] is granted in full, and all claims against Defendants Watkins, Scanlon, Freeman, and Ocasio are dismissed without prejudice.

### E.    Defendant City of Lawton's Partial Motion to Dismiss

Plaintiffs bring Claims Two (deliberate indifference), Three (wrongful arrest), Four (denied right to counsel), and Five (negligence) against the City. The City moves to dismiss only two of these claims—Claims Four and Five—arguing that Plaintiffs have failed to state a claim under the Sixth Amendment and the City is immune from the negligence claim under state law. [Doc. No. 20].

Judge Erwin's R. & R. recommends that the Court deny the City's motion to dismiss the Sixth Amendment claim because "Plaintiffs have stated a municipal liability claim under the Sixth Amendment against the City of Lawton, premised only on a custom of denying pretrial detainees a right to counsel, and not on a failure to train jail staff." [Doc. No. 58 at 11]. Judge Erwin recommends granting the City's motion as to the negligence claim because the City is immune under the GTCA. [*Id.* at 13–14]. Plaintiffs and the City both objected to the R. & R. Plaintiffs argue that they have stated a Sixth Amendment claim against the City under a "failure to train" theory [Doc. No. 61 at 2–3], and the City argues that Plaintiffs have failed to allege that the City violated Mr. Parker's Sixth Amendment rights via a custom of denying pretrial detainees the right to counsel [Doc. No. 64].

34

The Court called for supplemental briefing, noting that "[t]he parties have thoroughly addressed the other elements for alleging municipal liability," but "[t]he current briefing is inadequate to allow the Court to analyze the allegations of an underlying violation of the Sixth Amendment." [Doc. No. 78 at 3]. In response, the City filed a supplemental brief arguing that the right to counsel does not apply here because Mr. Parker was never "tried, convicted, or sentenced to a term of imprisonment" for the misdemeanor offense of disturbing the peace. [Doc. No. 80 at 2]. Moreover, the City argues, the right to counsel could not have attached because "the allegations set forth in the Complaint are insufficient to show that adversarial prosecutorial proceedings were ever initiated against" Mr. Parker. [*Id.* at 4]. Plaintiffs' supplemental brief asserts that "Mr. Parker was arrested, placed in custody, and was given a pretrial conference date of May 16, 2023," so "[t]here is no question that the City of Lawton had committed itself to prosecuting Mr. Parker for disturbing the peace." [Doc. No. 81 at 4–5].

"Proper analysis" of a § 1983 claim asserted against a municipality requires the Court to consider two separate issues: "(1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992). Here, the alleged constitutional violation arises from the Sixth Amendment, which provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also Gideon v. Wainwright*, 372 U.S. 335, 342–45 (1963) (recognizing the Sixth Amendment's right to counsel as incorporated against the states by the Fourteenth Amendment). "Notwithstanding the

35

apparently absolute language of the Sixth Amendment Counsel Clause, the Supreme Court has limited that right so as to exclude prosecutions for petty offenses for which the defendant is not 'sentenced to a term of imprisonment.'" *United States v. Reilley*, 948 F.2d 648, 650 (10th Cir. 1991) (quoting *Scott v. Illinois*, 440 U.S. 367, 374 (1979)). Specifically, for misdemeanor offenses, the Supreme Court has adopted "actual imprisonment as the line defining the constitutional right to appointment of counsel," which means that "the Sixth and Fourteenth Amendments to the United States Constitution require only that no indigent criminal defendant be sentenced to a term of imprisonment unless the State has afforded him the right to assistance of appointed counsel in his defense." *Scott*, 440 U.S. at 373–74. The Tenth Circuit has explained that, under *Scott*, "the constitutional right to counsel limits not the trial itself, but rather the sentence that may be imposed." *Reilley*, 948 F.2d at 654. In other words, "[b]y denying the defendant counsel, the court effectively waives its right to sentence him to prison." *Id.*

Here, there was no constitutional violation because the Sixth Amendment did not require the appointment of counsel. Mr. Parker was arrested and charged with disturbing the peace, which is a misdemeanor offense. [Doc. No. 1 ¶¶ 34, 101]. Mr. Parker was jailed upon his arrest for this offense; however, he was never imprisoned, as he was not convicted or sentenced for disturbing the peace. In non-felony cases, the Sixth Amendment only limits the sentence that an uncounseled defendant can receive; it does not limit a criminal trial or pretrial procedures. *See Reilley*, 948 F.2d at 654. Mr. Parker was never sentenced to a term of imprisonment, so the Sixth Amendment did not require the City to provide him with appointed counsel. Because Mr. Parker did not have the

36

right to appointed counsel for this misdemeanor offense, the Court need not address attachment or whether Mr. Parker was denied counsel at any critical stage of the proceedings.

As for Plaintiffs' negligence claim, Judge Erwin recommends dismissal [Doc. No. 58 at 13–14], and Plaintiffs did not object to this recommendation. [Doc. No. 61 at 5] ("[P]laintiffs respectfully object to the Report and Recommendation only as [to] its characterization that Plaintiffs did not make a failure to train argument under Count Four."). Neither exception to the firm waiver rule applies because Plaintiffs are represented by counsel and they have not provided an explanation for their failure to object to Judge Erwin's recommendation.

Therefore, the Court ACCEPTS IN PART and REJECTS IN PART the R. & R. [Doc. No. 58]. The Court GRANTS the City's Partial Motion to Dismiss [Doc. No. 20] in its entirety. Claim Four is DISMISSED with prejudice against the City. *See Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1219 (10th Cir. 2006) (explaining that if "a complaint fails to state a claim," "no amendment could cure the defect," and the "dismissal operates on the merits of the complaints," then the dismissal will "ordinarily be entered with prejudice"). Claim Five is DISMISSED without prejudice against the City.

IV.    **CONCLUSION**

In summary, the Court rules as follows:

- Regarding Defendants Smith and Ratliff's Motion to Dismiss [Doc. No. 21], the Court ACCEPTS the R. & R. [Doc. No. 62] as MODIFIED by this Order,

37

GRANTS the Motion to Dismiss Claims Two, Three, Four, and Five against Defendants Smith and Ratliff in their official capacities, and DISMISSES these claims without prejudice. The Court QUASHES service on Defendants Smith and Ratliff in their individual capacities. Failure to file proper service of process or waiver of service by **August 27, 2025**, will result in the dismissal of these defendants sued in their individual capacities without prejudice and without further warning by the Court.

- Regarding Defendant Kirkpatrick-Benton's Motion to Dismiss [Doc. No. 73], the Court ACCEPTS the R. & R. [Doc. No. 77] and GRANTS IN PART the motion to dismiss. Claims Three, Four, and Five are DISMISSED without prejudice against Defendant Kirkpatrick-Benton in her individual and official capacities. Claim Two is DISMISSED without prejudice against Defendant Kirkpatrick-Benton in her official capacity. The Court DENIES the motion to dismiss Claim Two against Kirkpatrick-Benton in her individual capacity.

- Regarding Defendant Paterson's Motion to Dismiss [Doc. No. 41], the Court REJECTS the R. & R. [Doc. No. 60], GRANTS the motion, and DISMISSES without prejudice Plaintiffs' claims against Defendant Paterson.

- Regarding Defendants Watkins, Scanlon, Freeman, and Ocasio's Motion to Dismiss [Doc. No. 40], the Court ACCEPTS IN PART, REJECTS IN PART, and MODIFIES IN PART the R. & R. [Doc. No. 59] and GRANTS the motion to dismiss all claims against Defendants Watkins, Scanlon, Freeman, and Ocasio.

Claims One and Five are DISMISSED without prejudice against Defendants Watkins, Scanlon, Freeman, and Ocasio.

- Regarding the City's Partial Motion to Dismiss [Doc. No. 20], the Court ACCEPTS IN PART and REJECTS IN PART the R. & R. [Doc. No. 58] and GRANTS the motion in full. Claim Four is DISMISSED with prejudice and Claim Five is DISMISSED without prejudice against the City.[8]

The following claims remain against the following defendants, assuming proper service:

- <u>Claim One</u>: Deliberate indifference claim under the Eighth and Fourteenth Amendments against Defendants Hallagin, Brooks, and Horne;

- <u>Claim Two</u>: Municipal liability claim for deliberate indifference under the Eighth and Fourteenth Amendments against the City and Defendants Smith, Ratliff, and Kirkpatrick-Benton in their individual capacities;

- <u>Claim Three</u>: Fourth Amendment claim against the City and Defendants Hallagin, Smith, and Ratliff in their individual capacities;

---

[8] Plaintiffs request leave to amend to cure any deficiencies if the Court concludes they have failed to state any of their claims. [Doc. No. 44 at 14]; *see also* [Doc. No. 28 at 23–24]. But a plaintiff cannot seek leave to amend a complaint in a response brief. *See* Fed. R. Civ. P. 7(b)(1) ("A request for a court order must be made by motion."); LCvR7.1(c) ("A response to a motion may not also include a motion . . . made by the responding party."); LCvR15.1 (explaining that a party moving to amend a pleading must attach the proposed pleading as an exhibit to the motion); *see also Albers v. Bd. of Cnty. Comm'rs of Jefferson Cnty.*, 771 F.3d 697, 706 (10th Cir. 2014) ("We have recognized the importance of Fed. R. Civ. P. 7(b) and have held that normally a court need not grant leave to amend when a party fails to file a formal motion." (quoting *Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999))).

- <u>Claim Four</u>: Sixth Amendment claim against Defendants Smith and Ratliff in their individual capacities;

- <u>Claim Five</u>: Negligence claim against Defendants Smith, Ratliff, Hallagin, Brooks, and Horne in their individual capacities.

Federal Rule of Civil Procedure 12(a)(4) governs answer deadlines for properly served defendants. This action remains referred to Judge Erwin.

      IT IS SO ORDERED this 28th day of July 2025.


JODI W. DISHMAN
UNITED STATES DISTRICT JUDGE